## No. 9587.

### THOMAS v. THOMAS.

Decided April 4, 1921.

Action to recover value of corporate stock. Judgment for plaintiff.

*Affirmed.*

*On Petition for Rehearing.*

1. GIFTS—*Essentials.* The essentials of a gift *inter vivos* are a clear and unmistakable intention to make the gift, and the consummation of such intention by those acts which the law requires to divest the donor and invest the donee with the right of property.

2. CORPORATIONS—*Stock—Transfer.* Title to shares of stock passes by transfer on the corporation's books and when shares have been so transferred the transferee becomes the shareholder. ·
   This rule applies, whether there is a sale or gift of stock.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Butler, Judge.*

Mr. GEORGE C. MANLY, for plaintiff in error.

Mr. EDWIN W. HURLBUT, Mr. THORNTON H. THOMAS, for defendant in error.

*En banc.*

MR. JUSTICE TELLER delivered the opinion of the court.

DEFENDANT in error had judgment in an action to recover from plaintiff in error the proceeds of a sale of shares in a mining company which stood in her name on the books of the company, the certificate for which, however, had been left in a safe used jointly by her husband and the plaintiff in error.

The substance of the errors assigned is that the finding and judgment of the court are contrary to the law and the evidence.

The plaintiff's cause of action is that defendant, without authority therefor, sold stock which belonged to her and refused to account for the proceeds.

The answer admits that the shares sold formed a part of a block standing in plaintiff's name on the books of the corporation, but, alleges that they were transferred to her by her husband for convenience only, he being still the owner. It admits, also, that the stock in question was transferred to defendant on the books of the corporation, but denies that it was done wrongfully. The other matters of defense were struck out on motion.

The only question, then, to be determined, is as to the ownership of the stock sold.

The court adopted special findings of the jury: (1) That plaintiff's husband made her a gift of the stock; (2) that the transfer to her was not colorable, merely.

Mr. Drumm, who bought one-half of the shares in question, testified that defendant told him the shares belonged to plaintiff (Abstract p. 36). Defendant wrote to his brother, (Fol. 373, quoted in opinion of trial court, p. 29 Supp. Ab.) that he told Drumm that *plaintiff* wished to sell one thousand shares; that if Drumm would take five hundred shares, he, defendant, would take five hundred shares, "and he bit and the deal was made."

It is not disputed that the stock was transferred to plaintiff on the books of the company by order of her husband, the original owner of it. Defendant being aware of the transfer and the purpose for which it was made, and hav-

ing, according to his own written statement, sold the stock as plaintiff's, with what propriety can he now assert that, as a matter of law, it was not hers? Was not the trial court fully justified in holding that, as against defendant, at least, the stock belonged to plaintiff?

But, regardless of defendant's admissions, the judgment is right, the undisputed evidence showing a completed gift. The essentials of a gift *inter vivos*, are (1) a clear and unmistakable intention to make the gift; and (2), the consummation of such intention by those acts which the law requires to divest the donor, and invest the donee with the right of property, 20 Cyc. 1194-1195. In this case the intent of the donor is established both by his testimony on the trial, and his order to transfer the shares. As has often been stated, a gift is completed when the donor transfers to the donee dominion over the property. Such transfer must be according to the nature of the *res*. It may be actual, or constructive and symbolical. *Brown v. Brown's Admr.*, 43 Ky. 535; *Pennington v. Gittings*, 2 Gill & J. 208; *Pitts v. Mangum*, 2 Bailey (S. C.) 588; *Gannon v. McGuire*, 160 N. Y. 476, 55 N. E. 7, 73 Am. St. Rep. 694. A delivery of possession, with intent to pass a present right of property, is a completed gift. *Young v. Young*, 80 N. Y. 422, 36 Am. Rep. 634.

The question being as to what acts shall establish a passing of title, there is, and in the nature of things, can be no difference between the evidence necessary to prove title in case of a sale and in case of a gift.

In a sale, title to shares passes by transfer on the corporation's books, and the certificate evidencing ownership is not necessary to the ownership. *Water Works Co. v. Holme*, 49 Colo. 412-428, 113 Pac. 501. When shares have been transferred on the corporation books, the title has passed, and the transferee is a shareholder. *Valleyview Co. v. Whitehead*, 66 Colo. 237, 180 Pac. 737. This is the general rule.

In *Colton v. Williams*, 65 Ill. App. 466, a husband, holding shares of stock as an heir of his first wife, notified the

corporation which issued the stock, that he had given the shares to his second wife. Her name being identical with that of the first wife, it was considered unnecessary to make a transfer on the books. The husband having died, the first wife's certificate being found among his papers, his executors claimed the shares.

In affirming the judgment which sustained the gift the court says:

"The title to stock is created by registry in the books of the corporation. The certificate is not the stock itself, but only evidence of the ownership of the stock. It has value only as such evidence, and apart from the shares which it represents it is utterly worthless. It is not essential, and a registered stockholder may exercise all his privileges without it. * * * Cook on Stock & Stockholders, Sec. 10; Beach on Private Corporations, Sec. 972. * * * Whether the finding of the certificate in that place (deceased's safe) was sufficient to justify a conclusion that it had never been delivered, and overcome his statement that he had given the stock to her, we deem it needless to inquire, since the delivery of the certificate was not essential to the transfer."

That the rule which applies to sales of shares should apply to gifts of shares, as above asserted, is conclusively established by the case of *Robert's Appeal*, 85 Pa. St. 84.

A gift of $100,000 worth of stock in the Pennsylvania Railroad Company had been made by a man to his niece, the stock transferred upon the company's books, and the certificates retained by the donor. They were found in an envelope in his safe after his decease. The stock was claimed by the executors of the donor's will. The Pennsylvania supreme court held that the transfer on the books was a complete conveyance of the shares to the donee, and that the retention of the certificates by the donor was immaterial inasmuch as he could not change the ownership of the shares evidenced by their registry, without consent of the donee. The court said:

"It is to be observed at the outset that here was a complete, perfect and absolute transfer of the legal title to

Miss Foster. The shares were transferred to her on the books of the company, by direction of the owner, and new certificates were taken out in her name. The plaintiff stands in no need of legal or equitable remedies to complete her legal title. The only relief which she needs and prays for is that her title be relieved from the claims of the administrators and trustees of Mr. Thompson's estate. * * * It is not a case, therefore, of an incomplete voluntary gift, or of a merely equitable title to a chose in action, acquired by an assignment which remains in the possession of the assignor. * *, * But here the gift is complete by the delivery of the thing itself, for transferring the shares to her upon the books of the company is putting her in complete possession of the thing assigned, and clothing her with the complete legal title. It stands in the place of a delivery. Such an act performs precisely the office which an actual delivery would perform if it were a chattel. It is as complete a delivery as the nature of the thing will admit of. There can be no clearer evidence of a design to part with the right of property in favor of another than an absolute transfer of the legal title to her for her own use. Retaining in his possession the certificates which are in her name, and which he could not use without her consent, cannot undo or qualify the decisive ownership with which he had invested her by the actual transfer to her on the books of the company. The best evidence of her ownership is the transfer on the books of the company. The certificates were but secondary evidence of her ownership, and only useful for purposes of transfer. They were nothing more than the official declaration by the company of what already appeared on their books."

The only way in which shares may be delivered so as to constitute a valid gift is by transfer of same on the books of the corporation. *Pennington v. Gittings, supra.*

The universal rule is that dividends are paid, not to the persons holding stock certificates, but to the owners of shares as shown on the books of the corporation. Can it be doubted that defendant in error could have compelled the

payment to her of any dividends declared, without presenting the certificate therefor?

It is said, however, that the equities are with Theodore inasmuch as he bought stock for more than it was worth at the time, and because he bought it in order to help his brother. Of course, if those were the facts, it would not militate against the judgment. Not infrequently judgments cause hardships to litigants. If the equities were with Theodore, as between him and his brother, that would afford no reason for denying to plaintiff the relief to which she is unquestionably entitled as owner of the shares.

The second defense, which attempted to inject into the case this controversy between defendant and his brother Thornton, was struck out on motion. It is not before us, and could not be so under the pleadings. The trial court was fully justified in its findings of fact, and it committed no error in applying the law to said findings. The judgment is accordingly affirmed.

MR. JUSTICE BURKE and MR. JUSTICE DENISON dissenting.

MR. JUSTICE WHITFORD not participating.

MR. JUSTICE DENISON dissenting.

The argument in the majority opinion with reference to the passing of the title to the stock is very strong; but it ignores the fact that the actual control of the stock was left by the plaintiff in her husband; assuming, however, that it is correct on this point, yet, nevertheless, I think the judgment should be reversed.

This was a bill in equity to compel the transfer of the stock. Admitting that the stock was given by Thornton to his wife, the following facts are found by the court or undisputed:

These brothers for 40 years had acted as one man, each doing for the other what that other might have done for himself. Either could sell or buy for the other. Plaintiff knew that. The stock was given her not later, under the evidence, than 1898. She permitted it to remain in her husband's name for 14 years thereafter and permitted him

to deal with it as his own. In 1912 it was exchanged for new stock which was issued in her name, but still left in the joint custody of the two brothers. From that time, as before, Thornton, her husband, looked after it for her and had authority to do so, though she denies his authority to sell it. No notice to Theodore of any change of authority is shown. December 1st, 1916, there was no Quintet stock in Thornton's name on the company's books.

Under these circumstances Thornton wrote to Theodore to sell some of *his* (Thornton's) Quintet stock, that he was in urgent need of money.

Pursuant to this order the sale was made of 1,000 shares of plaintiff's stock. Theodore believed he had authority to sell the stock. He applied the proceeds, $200, to Thornton directly and the balance to an investment in an oil deal in which they were jointly interested.

The plaintiff, then, having allowed her husband for 18 years to treat the stock as his own, is in no position to say that he had no authority to sell and ask a court of equity to compel its return to her by Theodore with whom he had so dealt those 18 years, and against whom there is no showing of bad faith, and who had accounted to Thornton in full.

Theodore applied none of the proceeds in his own sole interest. The evidence is uncontradicted that Thornton was interested in the oil deal and consented to the application, or at least, did not object.

It follows that the equities are with Theodore not only between him and his brother but between him and plaintiff.

The above conclusion is, of course, without regard to the absurd position of plaintiff and her husband, wherein she is accusing Theodore of selling her stock instead of and as Thornton's, and Thornton admits that it is true and that he actually got in cash far more than the stock was worth and yet will not make the mistake good to his wife out of his own stock.

Theodore and Thornton, between them, took some of plaintiff's stock. The question is which ought to return it. The matter is for a bill of interpleader. The case should be

reversed, Thornton made a party and the court should then say which of the two brothers ought to return the stock.

I am authorized to say that MR. JUSTICE BURKE concurs in these views.