No. 12,298.

HARDY *v.* CARRINGTON.

(288 Pac. 620)

Decided May 26, 1930.

Mr. EMMETT R. FEIGHNER, for plaintiff in error.

Messrs. MOYNIHAN, HUGHES & KNOUS, for defendant in error.

*In Department.*

Mr. Justice Campbell delivered the opinion of the court.

Action by Hardy, as plaintiff, against Carrington as defendant, and its object is to recover possession of a Chevrolet automobile which the plaintiff says is unlawfully held and detained by the defendant. On the trial the jury found for the defendant and upon this finding the court entered judgment for defendant accordingly. A full summary of the evidence will shorten discussion.

The Western Colorado Fair, a voluntary association or body of five or six prominent citizens of Montrose county, held a fair at Montrose in September, 1927. It advertised that it would give a Chevrolet automobile to the winner of a gift who was to be ascertained by a drawing of numbered coupons on the evening of the last day of the fair. To each admission ticket to the fair was attached a ticket or coupon containing a number which entitled the holder to participate in a drawing, at which drawing should be determined the winning number. To this end the fair board purchased from the Carrington Chevrolet Company, through E. J. Carrington, its resident agent at Montrose, a Chevrolet automobile of the coupe type. The president of this board gave the company a check for the purchase price of the car, the plan being that the car should be held by it until the drawing was had and the winner ascertained. The drawing was had and the ticket of a certain number was declared the winning ticket, and it was held by the plaintiff Hardy who had purchased the ticket and attended the fair. On the day following this drawing the plaintiff Hardy came to the office of the Chevrolet company, of which Carrington was the president and manager, showed him the ticket which he held and plaintiff was informed by defendant Carrington that it was necessary for him to obtain an order from a Mr. Loesch, who was the secretary-treasurer of the fair board. The plaintiff obtained this order and attached to it was the paper on which was indicated

the ticket held by the plaintiff. Plaintiff again visited the defendant's place of business and expressed dissatisfaction with the car which he had won. He said he did not want this car, it not being of the type which he desired. The defendant Carrington requested plaintiff to give him his name or initials so he could fill it in on a bill of sale which had already been drawn, and it was the purpose of Carrington at that time to give plaintiff this bill of sale and also the car, but the plaintiff told the defendant he did not want a coupe car, which was the car in question, and not to make out the bill of sale. Plaintiff and defendant engaged in some further discussion as to whether the Carrington company would be willing to exchange cars and plaintiff was told by the defendant that the only authority the company had was to deliver the particular car in question and that if he desired to take this car he could do so and exchange it for another. Nothing definite was concluded at the second interview. A third time plaintiff returned to defendant's place of business and requested a bill of sale to be made out to another individual and at the time plaintiff further expressed dissatisfaction with the car which he had won and said he did not want if for his own use and would not have it, but the defendant replied that he had no authority to make the bill of sale to any third person and would not do so, whereupon Hardy left defendant's office with the understanding that he did not want, and would not take, the particular car which he won.

Mr. Loesch, acting in behalf of the fair association, requested the father of plaintiff Hardy, who was a farmer living in the country, to come to Montrose, which he did, and the father and son saw Mr. Loesch at his place of business. There was a discussion between the three parties about the transaction in question, during which time the father said that he was opposed to gambling and that this was a lottery. He further said that other residents of the county had made donations to the fair, whereas he had done nothing and that he was able to

buy his son a car if he needed it. The result of the conversation was, in substance, that the father and son concluded to give whatever interest the son had in this car back to the fair association with the understanding that it would not be re-raffled or given to any other individual, but would be sold and the proceeds used in payment of premiums then due from the association to exhibitors. The father and son and Mr. Loesch do not agree in their testimony as to everything that was said during this interview. The father's version of the testimony was that he was to write a letter tendering the car to the association, which Mr. Loesch denies and states that the gift of the car in question was made to take effect at once in presenti. Mr. Loesch testifies positively that the conversation between the three ended by both father and son agreeing that they would turn back the car to the fair board and that the car should not be given to anybody else, and they also requested and designated Mr. Loesch as the person to see Mr. Asbury, the president of the fair board, and to tell him that they were giving back the car and the elder Hardy was to write a letter to the board which the latter was privileged to publish for the purpose of expressing his views on gaming and why the car was turned back. At once following this conversation Mr. Loesch went to President Asbury, and Asbury said that the association would accept the car. Asbury then got into communication with the other individual members of the board and they all agreed to accept the car back, and so stated, and they instructed Mr. Loesch to arrange for a resale of the car to the Carrington company. Loesch proceeded at once to carry out the instructions of the fair board. The check issued by the fair board in payment of the car was given back to it, the car was turned back, the whole transaction closed on the basis and promise of the plaintiff giving back whatever interest he had in the car to the fair board, and the fair board selling it to the Carrington Chevrolet Company and receiving full consideration.

Soon after this transaction as to this disposition of the car was concluded, the plaintiff came into Carrington's office and demanded the car and was told by Carrington that the fair board had revoked its order, or taken it back, and had sold back the car to the Chevrolet company. The testimony tended to show, and evidently the jurors believed it, that it was on this fourth visit of the plaintiff Hardy to defendant Carrington's office, that he really for the first time asked for the bill of sale or for the car, which was subsequent to the revocation of the order of the fair board to the Chevrolet company to deliver the car to the plaintiff. Thereafter the plaintiff and his attorney visited Asbury, the president of the board, and the attorney stated at the interview which followed that plaintiff had been wrongly advised or persuaded to give the car back and that he had changed his mind and that he, the attorney, felt that Hardy had a right to do so.

There was some conflict in the testimony, but chiefly between that of the witness Loesch and the two Hardys. Evidently the jury believed the testimony of Loesch; in fact, the jury was warranted in believing the testimony that the Hardys gave back, to take effect at once, this car to the fair board, the fair board accepted the gift and at once thereafter received back from the defendant the check which it had given for the automobile and sold back the automobile to the defendant.

The theories upon which plaintiff brought this action and tried it below are, First, that the relation of bailment arose out of the transaction between the fair board and the defendant, relative to this Chevrolet automobile and the bill of sale therefor from the time of the purchase thereof by the fair board until delivery of the order by the fair board to the defendant, instructing him to give possession to the plaintiff. Second, that from the time the defendant received the order from the fair board the relation of bailment was terminated and the defendant in turn became the bailee for the plaintiff. Third,

that the fair board made a gift of the automobile and gave a bill of sale therefor to plaintiff. Fourth, that the plaintiff did not give back to the fair board the car.

The court's instructions to the jury, which were brief, but sufficiently comprehensive, were not objected to by either of the parties, and there are no adverse rulings of the court upon the evidence that afford the plaintiff any ground for relief.

The defendant in his brief first contends that this transaction or plan of the fair board, in order to increase the attendance at the fair by awarding prizes to purchasers of tickets, plainly constitutes a lottery under article XVIII, §2 of our Constitution, and section 3759, et seq., C. L. 1921. If it were necessary to pass upon the validity of this plan or scheme to attract visitors to the fair, we might be compelled to declare the entire plan illegal and that plaintiff was entitled to no relief whatever in any view of the case. But, inasmuch as the question seems not to have been presented to the trial court, and no instruction was asked concerning it, and as decision of the point is not necessary to a determination of the controversy, we shall not enter upon a discussion of this important question. Our silence, however, with reference thereto must not be taken as the slightest indication that we consider the plan a legitimate one or that it gives rise to any claim for relief as against the fair association by a dissatisfied purchaser of a ticket for admission to the entertainment furnished by the fair board. It is apparent from the instructions of the court and the general tenor of the evidence that the parties tried not only the title and right of possession to this car as between the plaintiff and defendant, the only parties to the suit, but also title of the fair board as between it and the plaintiff. That the judgment must be affirmed is beyond question. In so far as there was any conflict in the testimony, the jury, upon fair instructions to which no exceptions were taken, found the facts to be in accordance with the claim of the defendant. Even if it be conceded, which

seems to be true, that plaintiff was the holder of the winning coupon, and, according to the plan of the fair board, thereby entitled to this automobile, the evidence is conclusive, and the finding of the jury was, in effect, that after he was tendered possession of the car he refused to accept the same, and, after interviews with representatives of the fair board and the defendant, he not only proposed to, but as matter of fact did, make a gift in presenti of the automobile which he says he won, to the fair board and that his intention was not to avail himself of any rights that he may have had to this automobile. This gift back to the board was reported, by plaintiff's consent and authorization, to the board by the witness Loesch, who was its secretary, and the same was at once accepted by the members of the board, which fact was at once communicated to the defendant Carrington who thereupon and at once gave back to the fair board the check which he had received in payment of the automobile and the automobile was resold and redelivered by the board to Carrington, the agent of the Chevrolet company from which company it had been purchased. It was after this transaction was completed that the plaintiff with his counsel informed the defendant and others that he had changed his mind about giving back the automobile to the fair board. The gift, however, had been completed before this change of mind on the part of the plaintiff. His gift having been accepted before this change of mind occurred, and the redelivery having been made and the entire transaction between all of the parties having been closed, it was too late for him to change his mind as against the right of the defendant, which had become vested before such change occurred.

The essentials of a completed gift inter vivos are: (1) A clear and unmistakable intention to make the gift; and, (2) the consummation of such intention by those acts which the law requires to divest the donor and invest the donee with the right of property. *Thomas v. Thomas,* 70 Colo. 29, 197 Pac. 243; *Wittman v. Pickens,*

33 Colo. 484, 81 Pac. 299; 28 C. J., p. 630, §21. In the case before us the plaintiff clearly and unmistakably expressed his desire and intention to give to the fair board an automobile which he had won at what some of the witnesses call a lottery. The intention was manifested to the secretary of the board and the latter was authorized by the plaintiff to communicate the same to the president and he did so, and the president at once conferred with other members of the board, all of whom manifested an acceptance of the gift, which was communicated at once to the defendant Carrington, who had the automobile in his possession, whereupon Carrington turned back to the fair board the check which had been given to him as the purchase price of the automobile. All of these acts were done before the plaintiff, as above stated, changed his mind and sought to rescind his gift and get possession of the car.

Wholly without reference to the question of the lottery scheme, which seems to have been raised for the first time in this court and which we decline to pass upon for the reasons above stated, the jury was justified in concluding, and by its verdict in so determining, that a valid gift back to the fair board by the plaintiff of this automobile was made and fully accepted and legally consummated before the plaintiff changed his mind about the gift and before he communicated his retraction to the fair board or to the defendant.

The judgment is accordingly affirmed.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE ADAMS and MR. JUSTICE ALTER concur.