No. 15,385.

JOHNSON ET AL. *v.* HILLIARD, ADMINISTRATOR.
(160 P. [2d] 386)

Decided June 11, 1945.

Mr. MILTON C. GARWOOD, Mr. OMAR E. GARWOOD, for plaintiffs in error.

Mr. BENJAMIN E. SWEET, Mr. GRANT E. McGEE, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

IN a declaratory judgments action brought in the district court, B. C. Hilliard, Jr., public administrator of the estate of Augusta L. Scharf, sought determination of the ownership of certain bonds claimed by Louise M. Johnson, also known as Mrs. Henry Johnson, and Anna Zalinski.

Reference will be made to the parties either by name or as plaintiff and defendants as that position was taken by them in the trial court. Judgment was entered in favor of plaintiff, to review which defendants sued out this writ of error.

The facts giving rise to this controversy are substantially as follows: Augusta L. Scharf was an aged woman in ill health, but on December 23, 1941, not in imminent danger of death, as she supposed. At her death she possessed an apartment house of an appraised value of $3,450.00; owned, or had owned, Cities Service bonds of the par value of $2,500.00, furniture and furnishings inventoried at $300.00, and less than $100.00 in cash. Anna Zalinski was a friend of Mrs. Scharf and had been her servant for a number of years prior to her death on January 4, 1942. Louise M. Johnson was Mrs. Scharf's close friend and confidante for many years.

On December 23, 1941, Mrs. Johnson and two of her friends called upon Mrs. Scharf, who, while not bedfast, was not in good health. Immediately upon these visitors entering Mrs. Scharf's apartment, she requested pen and paper and asked Anna to bring some envelopes, which, it developed, contained the bonds in question. Without preliminary conversation or discussion, Mrs. Scharf wrote and signed the following memorandum, witnessed as indicated:

"I give Mrs. Johnson the sole right to my Bonds all of them, for my expenses in case I pass away—

Augusta L. Scharf<br>Dec. 23, 1941.

"Witnesses
    Louise D. Merriman
    Camille H. Brunell"

Immediately after the above had been written and witnessed, Mrs. Scharf dictated the following instructions, which were subscribed by Mrs. Johnson and signed by Mrs. Johnson for Mrs. Scharf:

"Denver Colo. Dec. 23, 1941.                    (Copy)

"If Mrs Scharf should get well and strong again, I will return to her 4 Bonds as she requested. If she passes away, I am to give Anna Zalinski the one Thou-

sand dollar Bond. A gift to her for her services during her poor health the last 3 years. She was always willing and kind through very trying circumstances. Louise the expences I want you to pay are Anna, and have my name put on my Tomb stone. My funeral expence must come from the house. As well other bills when house is sold, partly dictated by

"Mrs. Augusta L. Scharf

"I Pledge to carry out her wishes,
Mrs. Henry Johnson
1433 Forest Str. Denver"

Contemporaneously with the completion of the memorandum, Mrs. Scharf delivered the bonds in question to Mrs. Johnson.

Mrs. Scharf suffered a cerebral hemorrhage on January 2, 1942, from the effects of which she passed away on January 4, 1942. Subsequent to Mrs. Scharf's death, Mrs. Johnson gave Anna Zalinski a one thousand dollar bond, and some time thereafter arranged to have Mrs. Scharf's name placed on the headstone, and now claims that the remainder of the bonds are her personal property.

Plaintiff, upon his appointment as administrator, learned that the decedent had owned some Cities Service bonds, and the district attorney, cooperating with plaintiff, questioned both Mrs. Johnson and Anna Zalinski with reference thereto, but, because they had been requested by Mrs. Scharf not to mention it, they did not disclose the fact that bonds, such as those sought, were in their possession. The bonds were deposited with the clerk of the district court pending final disposition of this case. The district court, in its findings, determined that the "evidence can only sustain the purported gifts of the Cities Service bonds to Mrs. Johnson and Mrs. Zalinski as a gift causa mortis, and that it lacks one of the essential elements to make such

a gift valid, to wit, that it was made in apprehension of death."

Plaintiff called Mrs. Johnson for cross-examination under the statute, and she testified that on at least two other occasions Mrs. Scharf had delivered into her possession these identical bonds "under the same circumstances," and at Mrs. Scharf's request had returned them to her. Mrs. Johnson also frankly stated that while Mrs. Scharf made no demand for the return of the bonds subsequent to December 23, 1941, yet if she had done so, they would have been most certainly returned.

The evidence discloses that the only liquid assets possessed by Mrs. Scharf on December 23, 1941, were a small amount of money and the bonds in question. She was aged and in ill health, and if the transaction in question should be construed as a gift inter vivos, we must determine from the oral, as well as documentary, evidence, that it was Mrs. Scharf's intention to presently, finally, and definitely dispose of practically all of her liquid assets and thereby impoverish herself.

Counsel for defendants take the position here that the evidence disclosed a gift inter vivos and frankly state, "It is the contention of the donee (Mrs. Johnson) that the gift was a valid one inter vivos completed in all respects during the lifetime of the donor with absolute passage of title to the bonds at the time of actual manual delivery by the donor, with a promise on the part of the donee at some future time to re-deliver the bonds upon the happening of a certain contingency." We agree with counsel that the evidence in this case compels us to find the transactions disclosed consummated a gift inter vivos if defendants are to prevail. The evidence does not justify a consideration of the law with reference to gifts causa mortis.

■■ A gift inter vivos, as we understand it, is one in which the donor parts with all present and future dominion over the property given. The subject of the

gift must be delivered to the donee, or someone for him, and the gift must be absolute and irrevocable without any reference to taking effect at some future period. *Thomas v. Thomas,* 70 Colo. 29, 197 Pac. 243; *Hardy v. Carrington,* 87 Colo. 461, 288 Pac. 620; 24 Am. Jur. 732, §4; 38 C.J.S. 781, §3; Thornton on Gifts and Advancements, p. 2; 2 Schouler's Personal Property (3d ed.), pp. 73, et seq. The memorandum signed by Mrs. Scharf on December 23, 1941, does not vest Mrs. Johnson with the absolute title to any bonds, but, construed in its most favorable light to Mrs. Johnson, was an attempt to constitute her a trustee for one specific purpose, and that was "for my expences in case I pass away." Our attention has not been called to any decision in which the phrase "in case I pass away" has received judicial construction, and we have been unable to find such a decision where the facts are similar to those in the instant case. If it is contended that the word "if" in the phrase implies any uncertainty, we are unable to give it such construction because to do so would interject an uncertainty into one of the certainties of life. The word "if" used in the memorandum must be equivalent to the use of the word "when," and, thus construed, the phrase in question should read as if written "when I pass away." We are fortified in this interpretation and construction by the partly dictated instructions of Mrs. Scharf appearing in the record, bearing Mrs. Scharf's name inscribed thereon by Mrs. Johnson, the first sentence of which seems to warrant a definite assumption that the transaction between Mrs. Scharf and Mrs. Johnson was not a gift inter vivos. The first sentence reads, "If Mrs. Scharf should get well and strong again, I will *return* to her 4 Bonds as she requested." The use of the word "return" is inconsistent with Mrs. Johnson's claim of ownership and perfectly consistent with a then existing ownership in Mrs. Scharf. The word "return" in its common and accepted use means to bring back or restore, and is a recognition of a right, ownership,

dominion or control of the article in one who has not the immediate possession thereof.

The surrender of the dominion or control, in order to effect a valid gift inter vivos, includes the parting of possession and relinquishment of all control, both present and future, of the property to the extent that it is beyond the power of the donor to recall it. The surrender of control and dominion must be such that if the donor resumes control of the property without the consent of the donee, he will become a trespasser and liable to the donee as such. 38 C.J.S., p. 799, §20; 24 Am. Jur., p. 741, §22.

The transaction disclosed by the documentary evidence herein, supported by the oral evidence, compels us to classify it either as a gift inter vivos or an abortive attempt at a testamentary disposition of the property. It is difficult, at times, to determine which of these two classifications is proper, and our determination must rest upon the intention of the donor. If the gift is effective in the lifetime of decedent and she has effectually divested herself of any power to recall it, there is no difficulty in determining that it is a gift inter vivos. However, if the gift does not take effect as a completed transfer, either legally or equitably, to the donee during the lifetime of the donor, it is a testamentary disposition and becomes valid only when made according to our statute pertaining to wills.

Under the evidence in this case, we hold that to make the questioned transaction between Mrs. Scharf and Mrs. Johnson a valid gift inter vivos there must have been a delivery of the bonds with the intention, on Mrs. Scharf's part, to relinquish all present and future control and dominion over them and to immediately and irrevocably transfer the title to Mrs. Johnson. The evidence, both documentary and oral, clearly indicates that this intention was not existent on December 23, 1941, when the questioned transaction between Mrs. Scharf and Mrs. Johnson occurred.

It is our conclusion, reached after a consideration of the phraseology used by Mrs. Scharf and that attributed to her, that she wanted to befriend Mrs. Johnson and Mrs. Zalinski, but failed in her efforts. We are satisfied that the evidence will not warrant us in holding that Mrs. Scharf made a completed valid gift inter vivos to Mrs. Johnson.

Judgment affirmed.

MR. JUSTICE HILLIARD did not participate.