## No. 15,635.

NELSON *v.* SPOTTS, ADMINISTRATRIX OF THE
ESTATE OF HARRIS.
(162 P. [2d] 224)

Decided September 10, 1945.   Rehearing denied October 8, 1945.

Mr. A. T. STEWART, for plaintiff in error.

Mr. JOHN W. ELWELL, for defendant in error.

*En Banc.*

MR. JUSTICE JACKSON delivered the opinion of the court.

THE district court, having concluded that the administratrix of Sallie Annie Harris's estate was the owner of savings account No. 18592, in the Minnequa Bank of Pueblo, standing in the name of Thelma C. Nelson in the amount of $4,046.09, entered a decree in accordance with this conclusion and issued an order authorizing and directing the bank (which, having been made a defendant, had filed an answer in the nature of an interpleader) to pay the proceeds of said account to the administratrix. Thelma C. Nelson comes here on writ of error, asking for supersedeas and also that the case be determined on the supersedeas application. We have elected so to dispose of it.

The record, other than the exhibits, consists solely of twelve pages of testimony of Dey F. Whelan, cashier of the Minnequa Bank of Pueblo, who was called as a witness for the administratrix. This testimony discloses that Sallie Annie Harris had opened an account, No. 8111, with the bank on July 1, 1922 in her own name; that July 12, 1933 she withdrew $387.29 from that account and deposited it in a new account, No. 15320, "a joint account of Sallie Harris or Thelma C. Nelson;" that there were various withdrawals from this latter account in subsequent years. In the meantime, the regular periodical interest credits were made. The only new deposit to this account was on December 30, 1938, when $1,000 was withdrawn from individual account No. 8111 and deposited in the joint account. August 9, 1939, Sallie Annie Harris closed both of the foregoing accounts—her individual account, No. 8111, and her joint account, No. 15320—and of the proceeds from them she deposited $4,000 in a new savings account, No. 18592, in the name of Thelma C. Nelson. This latter account is the subject matter of this action. The remainder of

the proceeds, $322.26, she apparently withdrew in cash and did not redeposit anywhere.

The evidence further shows, and the court made a finding, "That during her lifetime, the said Sallie Annie Harris rented a safety deposit box in said defendant bank, and after her death when the said deposit box was opened by the Inheritance Tax Examiner, the pass book (Plaintiff's Exhibit A) to said savings account No. 18592 was found therein."

Cashier Whelan further testified that there were two keys to the safety deposit box, No. 220. "Thelma C. Nelson had a key and Mrs. Harris had a key. If Thelma C. Nelson came in there and wanted anything from the box, she got it, and she often came into the bank with this old lady. * * * The old lady [Mrs. Harris] was sick and sent her over there; she didn't have to write a note to me to let her in the box, I knew the circumstances. If this colored girl wanted to get into Sallie's box, she could. On occasions she came in with this old lady."

As to the purpose of the bank accounts, the witness testified that Sallie Harris had taken the matter up with him on a great many occasions; that, "She didn't want anybody to have this money but this little colored girl, Thelma C. Nelson. She did all this so that she would be sure that Thelma C. Nelson got this money." This was the theme of his testimony on direct, cross, and redirect examination. The witness testified further, "I am telling you the circumstances that she [Mrs. Harris] put this money over into this account and we have this signature, and of course, anyone who could write that signature [Thelma C. Nelson's] we would honor that check for that amount." Referring to Mrs. Harris, he testified, "Yes, she was in and out of that bank, I suppose, around twenty years." The signature of Thelma C. Nelson was obtained by the bank at the time the joint account was opened, and this signature was used in the new account, No. 18592, which was in the sole name of Thelma C. Nelson.

The trial court made a finding, "That during the lifetime of the said Sallie Annie Harris, defendant Thelma Nelson made no claim to said savings account No. 18592, nor did she ever exercise or attempt to exercise any control over either said savings account No. 18592 or said safety deposit box, until after the death of the said Sallie Annie Harris." We can find no evidence in the record to support this finding. For aught that appears from the evidence it could as well be inferred that Thelma C. Nelson, having access to safety deposit box No. 220, had placed the savings account book in the box, as to make the inference that Sallie Annie Harris had placed it there.

The trial court made a further finding, "That during her lifetime the said Sallie Annie Harris failed to do everything in her power to divest herself of every indicia of ownership of said savings account No. 18592," and then concluded, "That the issues of fact herein are found in favor of the plaintiff and against the defendant Thelma Nelson."

Based upon the foregoing findings of fact, the trial court, in its conclusions of law, held, "That if the said Sallie Annie Harris intended said savings account No. 18592 to be a gift inter vivos or a gift causa mortis to defendant Thelma Nelson, such a gift was not completed by the said Sallie Annie Harris during her lifetime; * * * That during her lifetime, the said Sallie Annie Harris retained possession of the pass book to savings account No. 18592 and exercised control and dominion over both said savings account No. 18592 and said safety deposit box in which she kept said pass book."

We have reached the conclusion that the judgment of the trial court is not supported by the law which we have on several occasions applied in similar cases. We believe the testimony of the bank cashier clearly established a gift inter vivos, the essentials of which we set forth in *Thomas v. Thomas*, 70 Colo. 29, 197 Pac. 243, as follows: "(1) A clear and unmistak-

able intention to make the gift; and (2), the consummation of such intention by those acts which the law requires to divest the donor, and invest the donee with the right of property, 20 Cyc. 1194-1195." That was a case in which there was a transfer of stock in a corporation by the donor into the donee's name, coupled with a retention of the certificate issued in the donee's name by the donor. On that point we said, quoting from *Robert's Appeal,* 85 Pa. St. 84: "There can be no clearer evidence of a design to part with the right of property in favor of another than an absolute transfer of the legal title to her for her own use. Retaining in his possession the certificates which are in her name, and which he could not use without her consent, cannot undo or qualify the decisive ownership with which he had invested her by the actual transfer to her on the books of the company. The best evidence of her ownership is the transfer on the books of the company. The certificates were but secondary evidence of her ownership, and only useful for purposes of transfer. They were nothing more than the official declaration by the company of what already appeared on their books." See, also, *Johnson v. Hilliard,* 113 Colo. 548, 160 P. (2) 386, for a definition of gift inter vivos.

In *First National Bank v. Mulich,* 83 Colo. 518, 266 Pac. 1110, we affirmed the action of the trial court holding that a simple written request addressed to the bank that the checking account of a patron, "be made joint with my brother * * * in case of my death," constituted a valid gift inter vivos.

In the more recent case of *Eisenhardt v. Lowell, Executrix,* 105 Colo. 417, 98 P. (2d) 1001, we applied the principle announced in *Thomas v. Thomas, supra,* it appearing that the donor had transferred corporate stock to himself and another as joint tenants, placing the new certificate in his safety deposit box where it was found upon his death. We held that the shares of stock so registered in the names of the joint tenants belonged

to the surviving joint tenant and not to the estate of the other joint tenant, the original donor.

In the instant case the facts are even stronger in favor of the transferree than in the cases heretofore cited, for here we have the donor over a period of years clearly evidencing her intention that the donee should take, not merely by creating a joint tenancy, but subsequently, in order to make assurance doubly sure, transferring the funds from the joint account into the sole name of the donee.

■ Counsel for the administratrix seeks to distinguish this case from the bank cases, *First National Bank v. Mulich, supra,* and *Boettcher v. Colorado National Bank,* 15 Colo. 16, 24 Pac. 582, because the latter relate to checking accounts; whereas the present case involves a savings account, the pass book of which contains the provision, common to most savings accounts, that the pass book must be presented at the time of any withdrawals in order that such payment may be duly entered therein. Counsel also argues that this feature also distinguishes the instant case from *Eisenhardt v. Lowell, supra,* and stresses the point that Sallie Annie Harris had possession of the savings account book for account No. 18592 in her safety deposit box. Assuming that it would be necessary to present the savings account book in order to withdraw funds from the account, we are still of the opinion that Sallie Annie Harris had made a complete gift inter vivos to Thelma C. Nelson. The testimony of the administratrix' witness affirmatively shows that Thelma C. Nelson had access to the safety deposit box No. 220 in which the savings account book was located. When Sallie Annie Harris transferred the savings account into the name of Thelma C. Nelson and permitted the latter to have one of the keys to the safety deposit box in which her savings account book· was placed, and allowed her· access to it, there existed the two requirements of a completed gift to Thelma C. Nelson. The latter at that point had complete control

over the account, and Sallie Annie Harris by the same token had surrendered it.

Counsel for the administratrix argues that Thelma Nelson's answer is defective in that it is neither a general denial nor does it set up an affirmative defense. Regardless of whether the answer is or is not as comprehensive as might be desired, in that one paragraph may be so read as to contain a negative pregnant, we are of the opinion that the evidence offered by the administratrix does not support the complaint and has failed to establish her ownership in the savings account.

The judgment is accordingly reversed.