## MUIR v. GREGORY.

(Circuit Court of Appeals, Second Circuit. February 16, 1909.)

### No. 151.

GIFTS (§ 19*)—INTER VIVOS—COMPLETION BY DELIVERY.

A testatrix, who had provided in her will for a gift of $50,000 in bonds to her brother, when in Europe, some two years before her death, wrote him that in lieu of such bequest she transferred to his personal account certain described bonds of the par value of $50,000. The bonds were at that time in a safety deposit box in New York City, to which the brother had access, and he thereupon removed them. *Held*, that the gift was one in præsenti, which became complete when the donee reduced the bonds to possession, and was not affected by a subsequent attempt of the donor to give them to another.

[Ed. Note.—For other cases, see Gifts, Dec. Dig. § 19.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 158 Fed. 122.

Lanier McKee (William H. Thitchchener, of counsel), for appellant.

Marshall, Moran & Williams, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The suit involved the ownership of certain bonds, par value $50,000; complainant claiming their proceeds which are in the possession of defendant. As presented on the argument his claim of title is as follows: The original owner was Edla J. McPherson, a widow. On March 30, 1900, she executed an assignment of all her right, title, and interest in the bonds to her daughter, Edla McPherson Muir, the wife of complainant. The mother had for some time been estranged from her daughter, because of her marriage, and had expressed herself with great bitterness when commenting on her daughter's conduct; but before the assignment they had become reconciled. The assignment gives a detailed description of the bonds, adding:

"All of which were in my safe deposit box in the Jersey City Safe Deposit Company, and should be there now, unless removed by George W. Gregory, who has access to said safe deposit box."

Gregory, now deceased, was Mrs. McPherson's brother and the husband of defendant. Mrs. McPherson did not physically deliver the

---

bonds to her daughter. It is conceded that at the time they were not in her possession, having been removed from the box by Gregory. Mrs. Muir subsequently died, leaving a will in favor of her husband, who brings this suit.

The answer to his claim is that at the time of the assignment Mrs. McPherson had no right, title, or interest in the bonds, which had theretofore become the property of George Gregory by gift fully completed. The evidence in support of this contention is as follows: The box was rented by the mother in March, 1898; it being arranged that herself, her daughter, and Gregory should have access to it, but she and Gregory alone qualified. Gregory had been in her husband's employ for some years before the latter's death (in 1897), and thereafter became her confidential man of business and attended to her affairs, for which services she continued to pay him. His principal support was the money thus received from the McPhersons. On March 28, 1898, she executed a codicil to her will which contained the following clause:

"First. I give and bequeath fifty thousand dollars in bonds of which I shall die possessed, at their actual market value at the time of my decease, irrespective of their par value, to my brother George W. Gregory for his own use.
"In lieu of $2000 income."

She retained this codicil in her own possession, and it may be inferred that it was subsequently destroyed by her. It has never been probated. At this time the relations of the mother and daughter were friendly. Early in July, 1898, the daughter eloped with complainant. The mother was greatly displeased, revoked her daughter's authority over the safe deposit box, and at once sailed for Europe. The record contains many letters written by Mrs. McPherson from abroad, and many hearsay statements as to what she said at different times. We do not express any opinion as to the competency of much of this testimony, which was put in by complainant, preferring to dispose of the case upon the record as he has made it.

On August 11th Mrs. McPherson wrote to Gregory:

"London, August 11, 1898.
"If you die first, I will provide for your wife. She shall have furniture, etc., also from 1014 Vermont Ave. That clause must be put in my will when I return. The $50,000 now invested in the commission business must be put at interest when the business is closed out, the interest to be yours for life, as well as the money left you absolutely. After your death the principal will be given in charity—unless Edla lives, remarries in her own rank and has children. We will arrange that unless you think it had better be done immediately when I return.          Edla J. McPherson."

Three subsequent letters are as follows:

"Paris, November 24, 1898.
'Dear George:  I wish to transfer to your account the following bonds:

| | |
|---|---:|
| 3d Ave. R. R. | $15,000 |
| Brooklyn Trolley | 10,000 |
| Standard Gas Co. | 10,000 |
| Edison Electric (Brooklyn) | 10,000 |
| 3d Ave. R. R. | 5,000 |
| | $50,000 |

"Yours very truly,                    Edla Jean McPherson."

"Nov. 28th.

"Dear George: In looking over my note book where I have recorded the bonds sent you I find I have written 3d Ave. R. R. twice, one for 15,000 and again for 5,000. I may not have made the same mistake in the transfer sent to you, but I have got it in mind that I have blundered as I was so ill that I could barely sit up to transact the necessary business, and so hasten to send you a second paper, which you can destroy, if the original is all right. I have made over all the bonds to you in a paper which dated before my death will be yours after I die—and will be valid—giving you the use of all the money invested in that way. I shall trust to your honor to leave anything outside of the 50,000 which is yours outright—to be left to your wife if she outlives you—in some form of memorial to John or Greggy as you see fit. They have been so outraged my poor dead their money used so scandalously and criminally that you and I who really loved and honored them must make amends. If I live to return I shall reduce the fund that goes to her under my will to a narrow sum and give the rest to you for life—afterwards in memoriam.

"Yours hastily, E."

"Nov. 28th, 1898. Paris.

"Dear George: I transfer to your personal account the following bonds—the total:

|  |  |
|---|---|
| 15,000 | Chicago, Mil. & St. Paul. |
| 5,000 | 3d Ave. R. R. |
| 10,000 | Brooklyn Trolley. |
| 10,000 | Standard Gas Co. |
| 10,000 | Edison Electric (Brooklyn). |

$50,000

"Fifty thousand dollars which I give you instead of that sum named in my will. I have revoked the bequest by codicil made here the 26th of November 1898.

"Yours very truly, Edla Jean McPherson.
"To George W. Gregory."

These documents evidence a gift of the bonds enumerated. At that time they were contained in a box to which donor and donee both had access. If the donee made the delivery complete by reducing the bonds to his individual possession before the donor revoked the gift or herself removed the bonds, his title to them would become perfect, and subsequent transactions could not operate to defeat it. Whether he removed the bonds at once, or allowed them to remain for a considerable time, is immaterial, so long as he did remove them before revocation. The testimony leaves no doubt in our minds that he did so remove them. The defendant, Mrs. Gregory, testified that in December, 1898, her husband returned home one day bringing with him some 50 bonds, which she put in a bureau drawer overnight. On the following morning she and her husband went to the deposit vaults of the Fifth Avenue Bank and placed them in a box. She is corroborated by a clerk of the bank, who testified that its records show that on December 12, 1898, Mr. and Mrs. Gregory surrendered a box they had rented prior thereto and secured a larger one. Mrs. Gregory testified that thereafter from time to time she cut the coupons, and sold the bonds through her brokers on March 5, 1900, reinvesting the proceeds. Mrs. McPherson returned to this country in August, 1899, and went at first to the Hotel Endicott, where the Gregorys lived. In the fall of 1899 she became reconciled with her daughter. In November, 1899, Gregory had a paralytic stroke and became unfit to transact business. Mrs. McPherson became estranged from him, and, being a

woman of violent temper, thereafter used abusive language to and about him, as she had about her daughter. That, however, is immaterial, if he had already reduced the bonds to his possession.

The only testimony tending to contradict Mrs. Gregory is given by plaintiff and one of his lawyers, who state that Mrs. McPherson told them that when she returned from Europe in August, 1899, she went to her box and found these bonds there. Waiving all question as to the competency of such testimony, it is wholly unpersuasive, because according to these same witnesses she coupled her statement with the further one that, after she became reconciled with her daughter, she again visited the box and found that the bonds had been removed; that thereupon she went to the Endicott, where Gregory was seriously ill (which fixes the date as not earlier than November, 1899), and demanded a return of the bonds, which he refused, telling her that he had turned them over to Mrs. Gregory. There is not a scintilla of evidence to show that between her first and second visits to the box—if she made them—she had undertaken in any way to revoke the gift.

The original theory of the complaint was that these bonds were delivered to Gregory in trust to pay the income to Mrs. McPherson, and to use the principal in sustaining her will, should it be attacked after her death, and if not needed for that purpose they were to be returned to her estate. The only testimony to support this proposition is found in the statements of plaintiff and his lawyer that Mrs. McPherson told them that when she was in Paris she wrote Gregory, giving him instructions that, in case her daughter should contest her will, the proceeds of these bonds should be used to support it. Waiving any objection to the competency of this testimony, it is of no probative value, since it is wholly at variance with the letters which she concededly did write. Either the witnesses misunderstood her, or she misrepresented the facts, whether from defective memory or otherwise. Two days after the transfer of November 24th, she wrote to Gregory, saying:

"I send the transfer. * * * If I find myself getting any worse I shall transfer the rest of the bonds to you and have the transfer sealed up to be sent on to you—so you will have a fighting fund if necessary."

It is manifest that the clause in the second paragraph of the letter of November 28th refers to bonds other than the $50,000 already transferred. The correspondence plainly indicates that such transfer was a gift in præsenti in substitution of the bequest by codicil, which was at the same time revoked.

Finally, it is contended that, if there was a gift, it was induced by the undue influence and misrepresentations of Gregory, and therefore void. Here, again, there is a complete failure of proof. Mrs. McPherson's letters indicate that she was being continually advised that Muir was an unfit person for her daughter to associate with, and that her daughter was being abused to her; but there is nothing to show that Gregory was the writer of any such letters—no letter of his to her is in evidence—or that he inspired them. Indeed, she writes on January 10th:

"I send a letter of Henry's—burn after reading and of course never refer to it. After abusing E. [the daughter] in such terms that even hardened as I am I was revolted by the cruelty, etc."

Whatever others may have done to turn the mother against the daughter, nothing of that sort is brought home to Gregory, while the gift itself was but a variation in the method of making provision for her brother and his wife which she had contemplated and undertaken to make effective by a codicil long before any estrangement began.

The decree is affirmed, with costs.