No. 19,601.

LENA M. BUNNELL, CLAIMANT, *v.* WILLIAM C. IVERSON, ADMINISTRATOR OF ESTATE OF FRANK E. BARBER, DECEASED.
(364 P. [2d] 385)

Decided August 28, 1961.

Mr. WILLIAM B. NAUGLE, for plaintiff in error.

Messrs. LEWIS, GRANT & DAVIS, Mr. ROBERT H. HARRY, Mr. WALTER B. ASH, for defendant in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the court.

THIS case involves the validity of an alleged gift *causa mortis*. Plaintiff in error, the claimant, is the surviving sister of the decedent Frank E. Barber. She seeks reversal of a judgment of the district court dismissing her claim and holding the evidence insufficient to establish a valid gift. Hearing on this issue was first had in the County Court, where a like result obtained.

All of the facts are stipulated and are susceptible of brief summarization. Frank E. Barber, the decedent, died intestate on January 21, 1959, at the age of 76. A few months later his wife, Bessie Barber, also died. The gross value of decedent's estate at the time of death was $15,208.76. Bessie had an estate valued at $9,294.60 of which $6,164.53 had been in a jointly owned bank account with decedent. The decedent having predeceased his widow, the latter's heirs (brothers, sisters, nieces and nephews) will be the recipients of the distributable estate.

In letters to claimant written in October, 1958, and in December, 1958, decedent expressed his intention that she should have a substantial part of his property upon his death. The October letter, although vague as to the present subject, has a detailed description of his property and a discussion of his affairs. The December letter is more explicit in that he describes a safe in which there are two envelopes. He directs them to see Mr. Iverson, the present administrator, as to their disposition. This letter, which was addressed to claimant and upon which claimant relies, in part at least, as showing intent to make a gift, is as follows:

"Dec 4th 1958

"Dear Folks.

"I recd you letter but I am not made at you Anna gave it to me the next day when I went in to start her clock you said that I did not say where we had any thing only at the bank well that is why I want you folks to come out here if and when any thing happen to either one of us. I have a safe in the clothes closet it is not very big the key is hanging on the face of the cubbard on the left side of the door and the safe is under the cubbert and the safe is two envelopes where you can find $14,500.00 and you can see Mr. Iverson and he can tell you what you can do with that much of and I have other $ in the bank. Bessie is not able to do much of any work she just sets in the rocking chair most all the time and I can hardly do any thing to please her the doctor tells me every Sunday that she is failing but he has been saying if for over a year now so dont know how long Please burn this I will try and tell you more

Frank"

Prior to his last illness decedent had told Mr. Iverson, who here appears as administrator, of his desire to give some of his money to claimant. He showed Iverson a safe and told him that there were two envelopes in it, one of which was for claimant and the other for Iverson.

On January 14, 1959, while decedent was ill in St.

Joseph's Hospital he told Iverson that he had hidden two envelopes behind the kitchen sink at his house. He requested Iverson to go there to recover the envelopes and to send one to claimant and to keep one for himself. He also told him that there was in excess of $10,000.00 in the two envelopes but he failed to specify which envelope was to go to the claimant and which was to be retained by Iverson. On that occasion he told Iverson that he did not think he was going to recover from his illness or that he would get out of the hospital.

Instead of carrying out decedent's instructions Iverson consulted the doctors who told him that deceased would recover and he told decedent that he should make a will, and that he, Iverson, was not going to recover the envelopes. On January 21st, Iverson took a printed will form to the hospital for the purpose of having decedent execute it. He learned, however, that decedent had died fifteen minutes before his arrival. After this Iverson went to the Barber residence and found the package lodged behind the sink. He did not remove it until he had consulted his lawyers and the envelopes were not opened until a special administrator had been appointed at which time they were opened in court in the presence of the special administrator. One of the envelopes contained $9,100.00 in one hundred, and fifty, dollar bills. The other envelope had $1,330.00, in twenty and ten dollar bills.

Iverson did not file a claim and he confirmed this waiver by testimony in court.

The trial court denied the claim on the ground that the donative intent was nullified when the decedent agreed to Iverson's suggestion that he make a will. On this the court said:

"The Court feels that when Mr. Iverson told the decedent he was going to recover and that he would not get the two envelopes and make distribution of them but suggested that he make a will, which the decedent agreed to, that the decedent then and there revoked any inten-

tion, if he had any at that time, of making a completed gift, and that he was going to dispose of his property by a proper testamentary disposition, valid under the laws of the State. Unfortunately, Mr. Barber died before this intention could be carried out; and while the Court is sympathetic with Mrs. Bunnell and feels that certainly the decedent intended that she should have a portion of this money, he did not carry out his intention by a proper testamentary disposition nor by a completed gift."

In seeking reversal claimant argues that:

"A. The trial court erred in holding that the elements of a valid gift had not been proven.

"1. The fact that decedent did not specify on the envelopes who the recipients were to be does not defeat the gift.

"2. The fact that decedent on his death bed stated that he would make a will did not revoke the gift.

"B. The facts in this case conclusively show that decedent made a valid gift to claimant in the amount of $9,100."

In support of his position opposing the gift, defendant points up the vagueness and obscurity of the transaction. He argues that the facts fail to disclose the specific intention of the decedent regarding which envelope was intended for which donee. Also relied on is the fact that there was revocation resulting from the donor's decision to make a will prior to completion of the gift.

■ There is indeed obscurity in the stipulated facts as to whether the subject transaction was intended to be a gift *causa mortis* or *inter vivos*. If it could be upheld on either ground it would be our duty to recognize its validity. It is a most unfortunate fact that a decedent's manifest intention has to be so often thwarted in cases involving informal testamentary and non-testamentary dispositions such as the present one. Procedural safeguards against fraud must be complied with, although they are seldom observed by the uninitiated.

■ It is fundamental that in order to constitute a

valid gift there must be: *first,* a clear and unequivocal intent on the part of the donor to make a gift and, *secondly,* delivery of the subject matter or other action on the part of the donor and *donee* which effectively divests the former and invests the latter with title or property in the *res.* This is but a paraphrase of the language of the Court per Justice Campbell in the definitive case of *Hardy v. Carrington,* 87 Colo. 461, 288 Pac. 620, wherein it was said:

"The essentials of a completed gift inter vivos are: (1) A clear and unmistakable intention to make the gift; and (2) the consummation of such intention by those acts which the law requires to divest the donor and invest the donee with the right of property. Thomas v. Thomas, 70 Col. 29, 197 Pac. 243; Wittman v. Pickens, 33 Colo. 484, 81 Pac. 299, 28 C.J., p. 630, §21. In the case before us the plaintiff clearly and unmistakably expressed his desire and intention to give to the fair board an automobile which he had won at what some of the witnesses call a lottery. The intention was manifested to the secretary of the board and the latter was authorized by the plaintiff to communicate the same to the president and he did so, and the president at once conferred with other members of the board, all of whom manifested an acceptance of the gift, which was communicated at once to the defendant Carrington, who had the automobile in his possession, whereupon Carrington turned back to the fair board the check which had been given to him as the purchase price of the automobile. All of these acts were done before the plaintiff, as above stated, changed his mind and sought to rescind his gift and get possession of the car."

■ The Court thus recognizes that once the gift which is clear and definite in its terms is completed following acceptance and assumption of dominion by the donee it is not subject to revocation. The converse is, of course, that it can be revoked prior to its being completed.

The necessity for a completed delivery prior to revocation is clearly recognized in *Wittman v. Pickens,* 33 Colo. 484, 81 Pac. 299. In that case the decedent wrote a note ordering delivery and cancellation of a note and mortgage to his mother who was the debtor. The recipient of the note did not receive it until after the decedent committed suicide. In holding that the death prior to delivery revoked the gift the Court stated:

"It is admitted that the note and mortgage were not returned to appellant until after the death of Wittman.

"From these allegations and admissions, the conclusion is irresistible that actual delivery of the note and mortgage was not made by Wittman to Fisher.

"The death of the principal terminated the agent's authority; hence the return of the note and mortgage, by Fisher, to appellant, after the death of Wittman, was without effect as against the administrator of Wittman's estate (appellee)."

The Court also rejected the argument that there was a constructive or symbolic delivery when it said:

"The weakness of this contention lies in the fact that it does not affirmatively appear from this record that delivery was made by the donor to a third person, who was to act as trustee for the donee."

Symbolic or constructive delivery will, of course, be sufficient if it effectively transfers title to the donee or to a trustee or agent acting on his behalf. *Thomas v. Thomas,* 70 Colo. 29, 197 Pac. 243. See also *Coxwell v. Forster,* 136 Colo. 44, 314 P. (2d) 302.

Acceptance by the donee is also an essential even though it is often presumed and need not therefore always be proved. See 38 C.J.S., Gifts, Sec. 29, p. 808, together with the cases which are there cited.

There is no governing precedent dealing with the crucial problem before us which is sufficiency of the symbolic delivery here relied on in the light of the failure of Iverson to reduce the envelopes to possession for the benefit of claimant before coming forward with the

idea of a substitute scheme, i.e. disposition by will. There are, however, cases from other jurisdictions demonstrating that the unexecuted gift is, in such circumstances, subject to revocation by the act of the donor or by his death. Thus in *Muir v. Gregory,* 168 Fed. 641, (C.C.A. 2nd Cir. 1909), the gift was the contents of a safe deposit box. The donee obtained possession. Subsequently the donor sought to revoke and the court held the effort to be ineffectual and at the same time placed great emphasis on the factor of reduction to possession by the donee prior to the attempted revocation. On this the Court of Appeals for the second circuit said:

"These documents evidence a gift of the bonds enumerated. At that time they were contained in a box to which donor and donee both had access. If the donee made the delivery complete by reducing the bonds to his individual possession before the donor revoked the gift or herself removed the bonds, his title to them would become perfect, and subsequent transactions could not operate to defeat it. Whether he removed the bonds at once, or allowed them to remain for a considerable time, is immaterial, so long as he did remove them before revocation."

Delivery of stock certificates to a broker with instructions to issue new certificates of smaller denominations and to distribute these to named persons was held to have been revoked by the death of the donor prior to completion of the mechanics of issuance and distribution in *Cross v. Cross,* 20 N. J. Misc. 359, 27 A. (2d) 877. It was there held that symbolic delivery was not present; that actual delivery of the new certificates was contemplated, and that death revoked the gift.

The decision of the Supreme Court of Oregon in *Waite v. Grubbe,* 43 Or. 406, 73 Pac. 206, is somewhat parallel to the instant one. There, the donor pointed out various hiding places where he had buried money and told the donee that he wanted her to have the several sums. It was held that the gift was in contemplation of death and

that the symbolic delivery was sufficient. There, however, the communication of the hiding place was direct and not through an agent as in the case at bar. Furthermore there was acceptance and no subsequent revocation by deciding to execute a will.

The fatal deficiency in the instant case arises in connection with the alleged symbolic delivery. It is the incompleteness of the transaction which compels us to condemn it. Iverson must be regarded as having acted as the agent of decedent until such time as he actually took possession of the money. Had he obtained this possession we could then hold that he was trustee for claimant, since acceptance is presumed. The gift then would have been beyond recall. Iverson, however, never accepted. Instead of carrying out his commission in accordance with instructions he returned to decedent with a new and different plan. Acquiescence by decedent in this new scheme effectively nullified the prior incomplete delivery and acceptance. The acts of decedent and of Iverson, regardless of how considered or strained, fail to raise a reasoned conclusion that the intent to give, which factor at least is palpably clear, was ever effectively carried out. Cf. *Coxwell v. Forster*, supra.

We are constrained to affirm the judgment of the district court and it is so ordered.

MR. JUSTICE DAY did not participate.