543 P.2d 852

In the Matter of the ESTATE of Ova LEWIS, Deceased.

Carolyn ESCHWEILER, Administratrix of the Estate of Ova Lewis, Deceased, Plaintiff-Appellant,

v.

Phyllis DOWNEY and the Estate of Leo Haskel, Defendants-Respondents.

No. 11533.

Supreme Court of Idaho.

Oct. 29, 1975.

---

6. 96 Idaho 338, 340, 528 P.2d 900, 902 (1974).

7. *Schaefer v. Elswood Trailer Sales*, 95 Idaho 654, 656, 516 P.2d 1168, 1170 (1973).

Stephen W. Boller, Hailey, for plaintiff-appellant.

Kneeland & Laggis, Ketchum, for defendants-respondents.

McQUADE, Chief Justice.

This appeal involves a dispute over the distribution of the estate of Mrs. Ova Lewis, who died intestate on August 12, 1966, in Hailey, Idaho. Her only heirs were three nieces and one nephew: plaintiff-appellant Carolyn Eschweiler, the ad-

ministratrix of the estate (hereinafter appellant); her sister Dorothy Blech, who has waived any interest she may have in the estate; and defendants-respondents Phyllis Downey and Leo Haskel, who is deceased and represented by his estate (hereinafter respondents). Appellant petitioned the probate court and received letters of administration for the estate in October, 1966. Pursuant to the order of the probate court, notice by publication to the creditors of the estate, requiring them to make claims within four months of the first publication was made from December 1 through December 22, 1966. A decree showing that proper notice had been given to creditors was entered by the probate court on February 20, 1967.

During the course of the administration of the estate, a dispute arose between appellant and respondents. The dispute centered around three main areas of controversy:

(1) Appellant's failure to include in the estate certain real property located in Hailey, Idaho;

(2) Appellant's failure to include among the assets of the estate a savings account at the First Federal Savings & Loan Association of Boise which was a joint account of appellant and the deceased, and

(3) Appellant's allowance of a creditor's claim to herself in the amount of $2,426.38. Appellant claims the real property and the bank account as her own. Appellant has not filed for record a final account of her administration of the estate.

Respondents filed a motion for an order to show cause in March, 1969, asking that the Hailey property and the Boise savings account be included in the estate, and that appellant's creditor claim be disallowed. A hearing was held on the motion in July, 1969, at which time the probate court set aside the motion, anticipating that the parties would reach an out-of-court settlement. However, the parties did not reach such a settlement and therefore respondents re-

newed their motion in May, 1972. This motion included new claims not germane to this appeal. An order to show cause was entered ordering appellant to respond to the motion.

To avoid multiple hearings on this proceeding, first before the magistrate's division of the district court, and then before the district court, by stipulation of the parties, this cause was heard *de novo* in the district court on September 12, 1972. The court entered judgment against appellant, ordering that the real property in Hailey and the Boise bank account plus interest be included in the estate, and disallowing appellant's creditor claim. The court also ordered that appellant be removed as administratrix, and that a public administrator be appointed to settle and distribute the estate. Following denial of appellant's objections to the court's findings of fact and conclusions of law, this appeal was taken. We affirm in part and reverse in part the lower court's judgment.

 In her first assignment of error, appellant maintains that the trial court erred in concluding that no gift was made to her of the real property in Hailey, Idaho, by deed from the decedent, and in ruling that this real property should be included in the probate estate. She claims the property passed to her outside of probate by a deed executed by the decedent before her death. According to appellant, a deed of gift was executed on March 5, 1965, naming her as grantee of the subject real property. She was then apprised of this fact by decedent. The record discloses that after the deed was executed, it was delivered to George F. McCoy, then Blaine County Recorder, who held it until Mrs. Lewis' death. Shortly after the death, appellant secured the deed from McCoy, and recorded it on August 15, 1966. This evidence in appellant's view supports the conclusion that a valid inter vivos gift of real property was completed through delivery to an agent during decedent's lifetime.

In *Zimmerman v. Fawkes*,[1] this Court enunciated the essential elements which must be present before a valid inter vivos gift will be found to exist:

" * * * The essential elements of a 'gift inter vivos' are: (1) A donor competent to contract; (2) freedom of will of donor; (3) the gift must be complete and nothing left undone; (4) the property must be delivered by the donor and accepted by the donee; (5) the gift must go into immediate and absolute effect." [2]

Respondents do not dispute the existence of the first three of these elements. Rather they contend there was no present delivery because the property did not pass beyond the dominion and control of the donor.

A necessary element of an enforceable gift be it inter vivos or causa mortis is:

" . . . present donative intent, that is the giver's purpose or motive to transfer immediately to the donee dominion over the object given."[3]

Such transfer or delivery need not necessarily be to the donee in person. It may be to a third party agent acting in the donee's behalf.[4]

▆▆▆ The question before this Court is whether McCoy was acting as the decedent's agent; i. e., whether Ova Lewis still exercised dominion over McCoy to request return of the deed to her. If she could have, then she did not relinquish all dominion, and no effective transfer was made. On the other hand, if the decedent had divested herself of control over the deed, then McCoy was acting, in effect, as appellant's agent. This is a question of in-

tent as of the time the deed was given to McCoy. The trial court made no finding of fact on this crucial point. Therefore, we must reverse on this ground and remand back to the trial court for such a finding. As stated in *Perry Plumbing Co. v. Schuler*,[5]

" . . . the trial court must make findings upon each and every material issue arising from the pleadings, upon which proof is offered. Its failure to do so will necessitate a remand for additional finding, unless such findings would not affect the judgment entered." [6]

▆▆▆ In her second assignment of error, appellant submits that the trial court erred in requiring her to include in the estate the savings account in the First Federal Savings & Loan Association of Boise, plus interest to date. Appellant argues that this savings account was a joint account with decedent and herself, and that upon the death of decedent, she was entitled to the entire account through the right of survivorship.

It is well established in this state that,

"[W]here money in a joint account is deposited by one party, and thereafter a question of the depositor's intent arises, the party asserting the gift must prove all the elements of a gift, excepting irrevocable delivery, by clear and convincing evidence." [7]

The record is devoid of a finding on the critical question of the decedent's intent at the time the joint savings account with appellant was established. Therefore we remand back to the trial court to make this finding on clear and convincing evidence.

1. 70 Idaho 389, 219 P.2d 951 (1950).

2. *Id.* at 391, 219 P.2d at 952.

3. *Christiansen v. Rumsey*, 91 Idaho 684, 686, 429 P.2d 416, 418 (1967).

4. *Boston Insurance Co. v. Beckett*, 91 Idaho 220, 419 P.2d 475 (1966); *Bunnell v. Iverson*, 147 Colo. 552, 364 P.2d 385 (1961).

5. 96 Idaho 494, 531 P.2d 584 (1975).

6. *Id.* at 497, 531 P.2d at 587.

7. *Idaho First Nat. Bank v. First Nat. Bank of Caldwell*, 81 Idaho 285, 295, 340 P.2d 1094, 1100 (1959). *See also In re Chase's Estate*, 82 Idaho 1, 348 P.2d 473 (1960); *In re Estate of Cooke*, 96 Idaho 48, 524 P.2d 176 (1974); *In re Estate of Bogert*, 96 Idaho 522, 531 P.2d 1167 (1975).

We do not believe that the enactment of the Uniform Probate Code in this state in any way modified the quantum of proof that a non-contributing party asserting a claim to a joint bank account by right of survivorship need introduce in order to prove a decedent's donative intent at the time the joint account was created. I. C. § 15–6–104(a) provides in pertinent part:

"Right of survivorship.—(a) Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent if an intent to give the account can be shown by the surviving party or parties . . ."

Professor Philip Peterson, instrumental in bringing about the adoption of the Code in Idaho, stated his belief in a law review article on Idaho's Uniform Probate Code,[8] that the above mentioned language was intended to codify the results of the Griffith's case.[9] In the Griffith's case, it was established that a non-contributing surviving joint tenant who claimed a right to the proceeds of a joint savings account by right of survivorship was required to establish the decedent's donative intent by "clear and convincing evidence," and not by a mere preponderance.

We are cognizant of the fact that I.C. § 15–6–104(a) differs from its counterpart provision in the Uniform Probate Code as promulgated by the National Conference of Commissioners on Uniform State Laws. The Uniform Probate Code provision is as follows:

"§ 6–104(a) Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evi-

dence of a different intention at the time the account is created."

Although this provision was not specifically adopted by our Legislature, nevertheless I.C. § 15–6–104(a) requires the surviving joint tenant to prove the decedent's donative intent at the time the joint account was established. There is no indication that in refusing to adopt section 6–104(a) of the Uniform Probate Code, and in adopting I.C. § 15–6–104(a), the Legislature intended to modify the standard in this state as announced in the Griffith's case. In the absence of other information that this was the Legislature's desire, we decline to read this intent into the legislation.

In her third assignment of error, appellant contends that the district court erred in denying her creditor's claim, and in requiring that this sum be placed back in the estate. She based the claim on travels from her home in Wisconsin to Blaine County, Idaho, to care for the decedent, and for the loss of time and wages incurred while looking after decedent. She argues that there is no prohibition against an administratrix filing a creditor's claim for monies lawfully due as a result of services rendered to a decedent prior to death.

Any claim asserted against an estate which is not presented within four months of the first publication of notice to creditors is barred. This was by statute both before the Uniform Probate Code was adopted in this state,[10] and after its adoption.[11] Notice to creditors was first published on December 1, 1966. The record discloses that appellant did not file her claim until July 24, 1967. We conclude that appellant's creditor claim, submitted well beyond the four-month period allowa-

8. Peterson, Idaho's Uniform Probate Code, A Bird's Eye View, 9 Idaho L.Rev. 133, at 143, fn. 29 (1973).

9. *Idaho First Nat. Bank v. First Nat. Bank of Caldwell, supra,* n. 7.

10. *See* I.C. §§ 15–602, 604 (since repealed).

11. *See* I.C. §§ 15–3–801, 803.

ble by law, was correctly disallowed as it was untimely filed.

In her final assignment of error, appellant maintains that the trial court erred in holding that she was not entitled to letters of administration because she was not a resident of Idaho, and that therefore a public administrator should be appointed to complete the administration of the estate. No finding of malfeasance while appellant was administratrix was made by the trial court although this issue was tendered by the parties. Rather, appellant was removed as administratrix peremptorily by the district court because of her non-residency. Appellant concedes that at the time she was appointed administratrix, the applicable statute made residence a prerequisite, but argues that the Uniform Probate Code, which came into effect on July 1, 1972 (two months before trial was held), eliminates that requirement, and represents the latest expression of legislative will. Therefore, it is appellant's position that the Uniform Probate Code should be controlling.

■ The Uniform Probate Code as adopted in Idaho was to apply to all proceedings then pending at the time of its adoption or thereafter commenced regardless of the time of death of the decedent except in two circumstances: (1) where it would not be in the interests of justice to do so, and (2) when it would not be feasible to do so.[12] In light of this policy, we reverse the trial court's ruling of law disqualifying appellant as administratrix solely because of her non-residency. However, because no finding was made as to whether any cause existed (other than the non-resi-

dency) for removing appellant as administratrix of the estate, we remand to the trial court to make findings relating thereto. In determining whether there exists cause for appellant's removal as administratrix, the trial judge should consider whether she complied with the statutorily prescribed duties incumbent upon the office of administratrix. In making this determination, no negative inferences should be drawn from:

(1) appellant's untimely filing of her creditor's claim against the estate;

(2) appellant's refusal to include the joint bank account among the assets of the estate, and

(3) appellant's refusal to include the property situated in Hailey among the assets of the estate.

The trial judge may consider all other relevant action or inaction of appellant while administering the estate prior to the commencement of this proceeding.

In summary, we *affirm*: the trial court's order denying appellant's creditor claim against the estate. We *reverse* the trial court's order requiring the inclusion of the real property located in Hailey in the estate, and *remand* for a finding to determine the decedent's intent at the time the deed was transferred to McCoy. We also *reverse* the trial court's order requiring the inclusion of the First Federal Savings & Loan Association of Boise joint savings account in the estate and *remand* for a finding to determine the decedent's intent at the time this account was established. Finally, we *reverse* the trial court's order that appellant was not entitled to letters of

---

12. Section 28 of Session Law 1971, Chapter 111, as amended by Section 2 of Session Law 1971, Chapter 126, and as finally amended by Section 26 of Session Law 1972, Chapter 201, provided that:
"Time of taking effect—Provisions for transition.—(a) This code shall be in full force and effect on and after July 1, 1972. (b) Except as provided elsewhere in this code, on the effective date of this code: (1) the

code applies to any wills of decedents dying thereafter; (2) *the code applies to any proceedings in court then pending or thereafter commenced regardless of the time of the death of decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this code;*" (Emphasis added).

administration, and *remand* for a finding to determine whether cause exists (other than appellant's non-residency) for not retaining her as administratrix.

Costs to appellant.

McFADDEN, J., sat but did not participate.

DONALDSON and BAKES, JJ., concur.

SHEPARD, Justice (special concurrence).

I concur with the results obtained by the majority opinion and concur with the majority opinion in all respects but one. The majority opinion holds that a donee-survivor of a joint bank account must show the donative intent by clear and convincing evidence. I disagree.

The authority cited by the majority does not dictate that result. While both the *Griffiths* and *Chase* cases reach that result, both were written prior to the adoption of I.C. § 15–6–104(a). *Bogert* expressly chose not to apply I.C. § 15–6–104(a). The standard of proof discussed in *Cooke* was unnecessary and dicta.

An even more compelling reason for my disagreement is the legislative history of I.C. § 15–6–104(a). It is clear that the sweeping revision of Idaho's probate code by the legislature followed almost completely "the Uniform Probate Code." Section 6–104(a) of that Uniform Code expressly required a showing of intent by clear and convincing evidence to negate a presumption of donative intent and survivorship. I would hold that our legislature in enacting I.C. § 15–6–104(a) expressly rejected the "clear and convincing" language of the Uniform Code and therefore I believe it to be the clear legislative intent to place the donative intent burden of proof upon the donee but only require that burden be carried by a preponderance of the evidence as distinguished from "clear and convincing" evidence. Cf. 9 Idaho Law Review 143 (1973).