591 P.2d 591 (1979)
The ESTATE OF Eva A. RAMSEY, formerly Eva A. Thompson, Deceased, Plaintiff-Appellee,
v.
The STATE of Colorado DEPARTMENT OF REVENUE, Division of Gift and Inheritance Tax, Defendant-Appellant (two cases).
Nos. 77-367, 78-022.
Colorado Court of Appeals, Div. I.
February 8, 1979.
*592 *593 McDaniel & Yates, L. W. McDaniel, Durango, for plaintiff-appellee.
J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Jeffrey G. Pearson, Asst. Atty. Gen., Denver, for defendant-appellant.
SILVERSTEIN, Chief Judge.
Defendant, Department of Revenue, Division of Gift and Inheritance Tax, appeals two adverse decisions of the trial court in relation to its assessments of inheritance and gift taxes against plaintiff, Estate of Eva A. Ramsey, Deceased, on a promissory note. We affirm.
Defendant assessed an inheritance tax against plaintiff based on the face value of a $73,400 promissory note. Upon objection to the assessment, the trial court reduced the assessment valuation of the note to $1,500 because the note was not a personal obligation of the maker and because the applicable statute of limitations had run. Defendant alternately assessed a gift tax against plaintiff for the face value of the note. Upon objection to this assessment, the trial court ruled that the note was the subject of a testamentary gift with an inheritance tax valuation of $1,500, and was not an inter vivos gift. Defendant appeals both rulings; the cases were consolidated for review.
The basic facts are undisputed. On July 27, 1950, Chester E. Thompson, Sr., and Eva A. Thompson (later Eva Ramsey) entered into an agreement with their son, Chester, Jr., for the sale of the family sheep business including real estate, sheep, and two automobiles; the contract price was $81,700. By agreement, the deed to the real estate and the bills of sale were to be held in escrow until the contract price was paid. The sales contract provided for an annual accounting of the sheep business and provided for payment from receipts of the business after deductions for expenses and a living allowance for Chester, Jr. The Thompsons retained a reversionary interest in the property in the event Chester, Jr., died or defaulted on the contract.
Chester, Sr., died in 1959 and Eva became sole owner of the real and personal property. Up to this time Chester, Jr., had made payments on the contract reducing the balance due to $73,400. The estate of Chester, Sr., was taxed for its half share of the contract in the amount of $36,700.
The deed was delivered and the contract balance of $73,400 was reduced to a promissory note executed by Chester, Jr., in favor of Eva August 8, 1962. A deed of trust to secure the note was executed and recorded the same day. The note read as follows:
"I [Chester, Jr.] promise to pay to the order of Eva A. Ramsey at the Burns National Bank, Durango, Colorado, the sum of Seventy-Three Thousand Four Hundred Dollars ($73,400) without interest, payable as follows . . . ."
The payment procedure obligated Chester, Jr., to make an annual accounting of the sheep business on or before November 1 each year and to pay the receipts of the business to Eva after deductions for expenses and a living allowance. No payments were ever made on the note.
Chester, Jr., sold part of the real estate in May 1963 and Eva released the original deed of trust. An amended deed of trust was executed May 10, 1963, and the parties cancelled and reexecuted the promissory note for $73,400, dating it August 8, 1962; all provisions of the original note were retained.
*594 The sheep business was terminated in September 1964 when Chester, Jr., sold the sheep.
Another parcel of land was sold by Chester, Jr., in 1968. Again, Eva released the deed of trust. An amended deed of trust covering the remaining property was executed and recorded March 28, 1968, and, at the same time, the parties cancelled the previous promissory note and reexecuted it for the sum of $73,400, dating it August 8, 1962, and retaining all original provisions. At the time of these transactions, the only income Chester, Jr., received from the property was lease income.
Eva mentioned to her attorney in 1973 and 1974 that she wanted to forgive the debt but the gift transfer was never completed. The attorney testified the gift was not completed because he could not locate the note; plaintiff also contends the gift was not completed because Eva discovered tax disadvantages to Chester, Jr., if she made a gift of the debt at that time.
Eva died October 16, 1974. In her will, executed June 21, 1973, she forgave the balance due from Chester, Jr., "on all indebtedness outstanding on the date of this will. I do not forgive any debts hereinafter incurred . . . ."
In order to evaluate the gift and inheritance tax consequences of these events to plaintiff, we must first interpret the legal effect of the promissory note and various deeds of trust executed and recorded to secure the note. We are free to make an independent interpretation of the documents. Stephenson v. Stephenson, 134 Colo. 96, 299 P.2d 1095 (1956). And our interpretation may consider the circumstances facing the parties at the time they made each agreement. National Sales Corp. v. Dennis, 93 Colo. 536, 27 P.2d 499 (1933).
The note stated a promise to pay without conditioning the obligation on the occurrence or non-occurrence of any event. The stated payment procedures indicated the parties' intention that the sheep business be a logical source, but not the exclusive source, for payment. This interpretation is supported by the evidence that the original promissory note was reacknowledged with the execution of a new deed of trust March 28, 1968, four years after the sheep business had been terminated.
We conclude the promissory note was a demand note. The provisions in the promissory note relating to the sheep business indicate the parties intended that if payment was made from that source, the accounting and payment were to be made on or before November 1 each year. When the provisions relating to the sheep business became inoperative, so did the date set for accounting and payment.
For purposes of the statute of limitations, the cause of action on the demand note accrued on March 28, 1968, the date of its last reacknowledgment and last recordation of the deed of trust. Section 38-40-106, C.R.S.1973; Kirby v. Bourg, 165 Colo. 500, 440 P.2d 151 (1968). Consequently, the cause of action on the note was barred by the six-year statute of limitations after March 28, 1974, over six months before Eva's death. Section 13-80-110, C.R.S.1973.
From this conclusion, the issue arises as to whether Eva made a gift of the loan to Chester, Jr., by allowing the statute of limitations to run.
Colorado's gift tax statute defines "gift" as follows:
"Where the property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the fair market value of the property exceeded the value of the consideration, for the purpose of the tax imposed by this article, shall be deemed a gift and shall be included in computing the amount of gifts made; but this provision shall not apply to any transfer made without donative intent." Section 39-25-107, C.R.S.1973 (1978 Cum.Supp.).
Having acknowledged a bona fide loan between Eva and Chester, Jr., defendant has the burden of proving that a gift was made of the loan sometime after the last acknowledgment of the debt. To effect *595 a valid inter vivos gift there must be clear and unequivocal intent to make a gift and consummation of such intention by the donor in some way relinquishing control of the gift property to the donee. Bunnell v. Iverson, 147 Colo. 552, 364 P.2d 385 (1961). Defendant urges that allowing the statute of limitations to run is, in and of itself, legally sufficient to transform the loan into a gift.
We have found only one case dealing with the question of a gift of a loan arising upon the running of the statute of limitations. In Estate of Grace Lang, 64 T.C. 404, no. 38 (1975) (on appeal to the 9th Cir.), the majority of the United States Tax Court held that under I.R.C. § 2512(b), a gift was created when decedent allowed the statute of limitations to run on a debt owed by her son. However, that case is distinguishable from the one here because it was decided under federal gift tax law which does not require a finding of donative intent to complete a gift when property is transferred for less than full consideration. In contrast, the Colorado gift tax provision, quoted above, specifically requires a finding of donative intent before a gift tax can be imposed on transfers made for less than full consideration.
The issue of donative intent presents a question of fact, and, being a factual inquiry, we are bound by the trial court's determination if there is evidence in the record to support it. Burnford v. Blanning, 189 Colo. 292, 540 P.2d 337 (1975). The facts indicate Eva retained the note and deed of trust and took no action to remove them from public record as encumbrances on the real property.
Furthermore, there was no relinquishment of the debt by her to Chester, Jr. While the statute of limitations may cause the remedy on a debt to be lost, it does not extinguish the debt. See In re Estate of Randall v. Colorado State Hospital, 166 Colo. 1, 441 P.2d 153 (1968). Because the statute of limitations is a personal bar which may be raised or waived by the debtor, Brereton v. Benedict, 41 Colo. 16, 92 P. 238 (1907); Holmquist v. Gilbert, 41 Colo. 113, 92 P. 232 (1907), Eva might have successfully sued to collect the debt from her son if he had chosen not to interpose the bar as a defense.
The valid testamentary bequest of the debt negated the presumption that an inter vivos gift was intended by Eva. Bunnell v. Iverson, supra; see Judge Drennen's dissent in Estate of Grace Lang, supra. We sustain the trial court's ruling that there was insufficient proof of donative intent to establish a valid inter vivos gift upon the running of the statute of limitations. Hence, there was a valid testamentary transfer of the debt to Chester, Jr., at Eva's death.
In sustaining the trial court's ruling that there was a testamentary transfer, we must also review the value assigned to the debt at the date of Eva's death. The inheritance tax assessment is based on the fair market value of the assets in the estate. Section 39-23-142, C.R.S.1973 (1978 Cum.Supp.). Based upon an undisputed appraisal of the value of the note by an expert, the trial court concluded that because of the statute of limitations defense to the note, its fair market value was only $1,500, that is, its nuisance value in a quiet title action. There being evidence to support this factual determination, we sustain it on appeal. Burnford v. Blanning, supra.
Judgment affirmed.
COYTE and SMITH, JJ., concur.