**BERENERGY CORPORATION,**
Plaintiff–Appellant and
Cross–Appellee,

v.

**ZAB, INC.; Zalman Resources, Inc.; Daven Corporation; and Sport Resources, Inc., Defendants–Appellees and Cross–Appellants.**

**Nos. 02CA0009, 02CA1872.**

Colorado Court of Appeals,
Div. V.

June 3, 2004.

Horowitz & Wake, Jay S. Horowitz, Peter C. Forbes, Robert T. Fishman, Denver, Colorado, for Plaintiff–Appellant and Cross–Appellee.

Brega & Winters, P.C., Charles F. Brega, Scott T. Rodgers, Denver, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge RUSSEL.

In this declaratory judgment action, plaintiff, Berenergy Corporation, appeals the trial court's judgment dismissing its amended complaint. Defendants, Zab, Inc; Zalman Resources, Inc.; Daven Corporation; and Sport Resources, Inc., cross-appeal the court's order denying attorney fees. We affirm in part, reverse in part, and remand with directions.

Sheldon K. Beren incorporated Berenergy to invest in drilling and acquisition ventures in oil and gas wells. In 1985, each of Beren's sons formed a corporation to participate in Berenergy's ventures. These ventures were operated either by Berenergy or a third party, but never by Beren's sons' corporations, which are the defendants here. Beren caused Berenergy to charge defendants $150 per well per month for overhead, a rate significantly below the industry standard.

Beren died in 1996. In 1998, Berenergy tried to sell its interests in wells operated with any defendant, but it found that the marketability of its interests was harmed by uncertainty surrounding the $150 arrangement. Berenergy then brought this declaratory judgment action under C.R.C.P. 57 to determine its rights and obligations with respect to defendants and the $150 arrangement.

The trial court dismissed Berenergy's case on alternative grounds: (1) the court lacked jurisdiction to grant declaratory relief when the dispute concerned the existence or validity of an oral contract; and (2) Berenergy's amended complaint failed to state a claim on which relief could be granted. The trial court also found that further amendment of the complaint would be futile because Berenergy could not cure the defects inherent in its cause of action. The court awarded de-

fendants their costs, but it denied their request for attorney fees.

## I. Declaratory Relief on Oral Contract

We first consider the trial court's jurisdictional ruling. The court held that a declaratory judgment action cannot be used to determine rights under an oral contract. We conclude that this ruling was incorrect.

### A. Governing Standards

■ A declaratory judgment action is appropriate when the rights asserted by the plaintiff are present and cognizable. *Lot Thirty–Four Venture, L.L.C. v. Town of Telluride,* 976 P.2d 303, 307 (Colo.App.1998), *aff'd,* 3 P.3d 30 (Colo.2000). A court may refuse to render a declaratory judgment where it would not terminate the uncertainty or controversy giving rise to the proceeding. Section 13–51–110, C.R.S.2003; C.R.C.P. 57(f). A court should not render a declaratory judgment unless it will fully and finally resolve the uncertainty and controversy as to all parties with a substantial interest who could be affected by the judgment. Section 13–51–110; C.R.C.P. 57(f); *Constitution Assocs. v. New Hampshire Ins. Co.,* 930 P.2d 556, 561 (Colo.1996).

■ The trial court has discretion to determine whether to permit a declaratory judgment action. *Constitution Associates v. New Hampshire Ins. Co.,* 930 P.2d 556, 561 (Colo.1996). An appellate court will overturn the trial court's decision only for an abuse of that discretion. *Troelstrup v. Dist. Court,* 712 P.2d 1010, 1012 (Colo.1986).

■ However, whether a court has jurisdiction under the Uniform Declaratory Judgments Law (UDJL), adopted in Colorado by § 13–51–101, et seq., C.R.S.2003, to determine the existence or validity of an oral contract is a question of statutory interpretation that we review de novo. *See City of Colorado Springs v. Conners,* 993 P.2d 1167, 1171 (Colo.2000) (whether trial court had subject matter jurisdiction to hear plaintiff's claim under the Governmental Immunity Act was a question of statutory interpretation subject to de novo review); *Gorman v. Tucker,* 961 P.2d 1126, 1128 (Colo.1998) (interpretation of a statute is a question of law, and an

appellate court is not bound by the trial court's interpretation).

### B. Discussion

■ Berenergy's case concerns the rate that it charges defendants for operating overhead. Berenergy asked the court to declare that there was no oral contract that would require it to continue charging only $150 per month.

The trial court ruled that it lacked jurisdiction to grant the relief that Berenergy sought. The court based this ruling on language in § 13–51–106, C.R.S.2003, and its corresponding rule, C.R.C.P. 57(b). This language indicates that a person may obtain a declaration of rights under a "written contract":

> Any person interested under a deed, will, *written contract* or other writings constituting a contract or whose rights, status or other legal relations are affected by a statute, municipal ordinance, *contract,* or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, *contract,* or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

(Emphasis added.)

In examining this language, the trial court found that the word "contract," as it appears in the second clause, impliedly refers back to "written contract" in the first clause. Therefore, the court ruled, "the legislature intended to make declaratory relief available only to persons seeking a determination of their rights or obligations under written instruments."

Berenergy challenges this ruling. Although it does not take issue with the trial court's interpretation of the language quoted above, Berenergy argues that the court overlooked other relevant language. Citing § 13–51–109, C.R.S.2003, and C.R.C.P. 57(e), Berenergy argues that declaratory relief is not limited to the enumerated situations, but is broadly available to settle controversies in other situations:

> The enumeration in sections 13–51–106 to 13–51–108 does not limit or restrict the

exercise of the general powers conferred in section 13–51–105, in any proceeding where declaratory relief is sought, in which a judgment or decree will terminate the controversy or remove an uncertainty.

Section 13–51–109, C.R.S.2003.

We agree with Berenergy. Although § 13–51–106 and C.R.C.P. 57(b) detail situations in which declaratory judgment actions may be brought, they do not restrict the court's ability to grant declaratory relief in other situations when appropriate. For example, declaratory relief has been held appropriate when the dispute centers, not on the interpretation of a written insurance policy, but rather on factual questions under the policy. *See Am. Family Mut. Ins. Co. v. Bowser,* 779 P.2d 1376, 1379 (Colo.App.1989).

Courts in other jurisdictions have held that declaratory relief is available under the UDJL to determine the existence or validity of an oral agreement. *See, e.g., Dukes v. Pearson,* 794 So.2d 1181, 1183 (Ala.Civ.App. 2001) (declaratory judgment is appropriate to construe oral contract before it has been breached); *Sorrentino v. Barwick,* 412 So.2d 55, 56 n. 1 (Fla.Dist.Ct.App.1982) (court has power to determine rights under an oral contract); *Penley v. Penley,* 314 N.C. 1, 332 S.E.2d 51, 65 (1985) (court has power to declare rights under an oral contract); *Ken Leahy Constr., Inc. v. Cascade Gen., Inc.,* 329 Or. 566, 994 P.2d 112, 117 (1999) (court has power to determine whether oral contract existed).

■ Defendants ask that we ignore authorities from other states because Berenergy failed to invoke the UDJL in its amended complaint. We reject this suggestion. By invoking C.R.C.P. 57 in its amended complaint, Berenergy also invoked the pertinent statute. *See People ex rel. Inter–Church Temperance Movement v. Baker,* 133 Colo. 398, 403, 297 P.2d 273, 276 (1956)(declaratory judgments statute is incorporated in the rules of civil procedure). And we would be required to consider out-of-state authorities in any event, for the General Assembly has indicated that Colorado's version of the UDJL should be construed so that it is in harmony with the law of other jurisdictions. *See* § 13–51–104, C.R.S.2003. These authorities support our conclusion that declaratory judgment actions may be filed to determine the existence of, or rights under, an oral contract.

Defendants also argue that, because the trial court could not reform the contract between Berenergy and defendants, it was powerless to terminate the controversy and thus did not abuse its discretion in declining to exercise jurisdiction. We reject this argument as well. As noted above, Berenergy asked the court to declare that no contract exists. Although Berenergy had initially pled a claim for reformation, it later dismissed this claim.

## II. Dismissal under C.R.C.P. 12(b)(5)

We next examine the trial court's determination that Berenergy failed to state a claim upon which relief could be granted. We conclude that the court erred with respect to Berenergy's claim for prospective relief.

### A. Governing Standards

■ Motions to dismiss for failure to state a claim under C.R.C.P. 12(b)(5) are "viewed with disfavor and are rarely granted under our 'notice pleadings.'" *Dunlap v. Colo. Springs Cablevision, Inc.,* 829 P.2d 1286, 1291 (Colo.1992) (quoting *Davidson v. Dill,* 180 Colo. 123, 131, 503 P.2d 157, 162 (1972)). A trial court may not dismiss a complaint for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of the claim. In addition, the trial court must view the allegations of the complaint in the light most favorable to the plaintiff. *Grizzell v. Hartman Enters., Inc.,* 68 P.3d 551, 553 (Colo.App.2003).

■ We review the trial court's order de novo. *Scott Sys., Inc. v. Scott,* 996 P.2d 775, 780 (Colo.App.2000). Like the trial court, we are required to view the allegations in the light most favorable to the plaintiff. *Pub. Serv. Co. v. Van Wyk,* 27 P.3d 377, 386 (Colo.2001).

### B. Discussion

Berenergy contends that its amended complaint presented four related claims, each of which could have yielded relief. We discuss each of these claims in turn.

### 1. "Gratuitous Arrangement" Regarding Overhead

 Berenergy alleged that, through a "gratuitous arrangement," Sheldon Beren caused it to charge only $150 per month for each of defendants' wells. It further alleged that, since Beren's death, it has been free to charge a different amount, one that reflects the industry standard rate, and it asked the court for a declaration to this effect.

The court rejected Berenergy's claim on alternative grounds. It first found that, by using the term "arrangement," Berenergy necessarily alleged that it had entered into an "agreement" to charge only $150 per month. The court then reasoned that, because the agreement was supported by consideration—defendants' corresponding agreement to pay $150 per month—Berenergy essentially had alleged that it was party to an enforceable contract.

Alternatively, the court found that the term "gratuitous" meant that the $150 rate was a "gift." Because this gift had already been given and received in 1986, the court ruled, it was complete and could not be revoked.

We disagree with the court's view of the amended complaint. The phrase "gratuitous arrangement" can reasonably be construed to mean something that is neither an enforceable contract nor a completed gift. In this context, the phrase contemplates the following: (1) Sheldon Beren caused Berenergy to charge the favorable rate of $150 per month as an act of kindness to his sons; (2) although unable to change the rate for months in which it had already charged and received $150, Berenergy, acting though Beren, was free to increase the rate at the beginning of each new month; and (3) Berenergy, acting through its current officers, remains free to increase the rate now.

We conclude that, on its face, the amended complaint alleges facts that would entitle Berenergy to the declaration it seeks—a determination that it is free to discontinue its practice of limiting overhead charges to $150 per well per month. Accordingly, as to this aspect of Berenergy's amended complaint, the trial court's order of dismissal was erroneous and is reversed.

### 2. Unenforceable Oral Contract

 Pleading in the alternative, Berenergy alleged that, if the $150 rate was not charged pursuant to a "gratuitous arrangement," and was instead the subject of an oral contract, the contract was unenforceable under the statute of frauds.

The trial court found that, because such a contract could theoretically be performed within one year, the statute of frauds was inapplicable. *See* § 38–10–112, C.R.S.2003 (unless in writing, an agreement is void if it is not to be performed within one year). The court found that "the agreement with respect to the $150 Rate is contractual in nature, and that this contract remains enforceable to this day."

These findings are premature. If, after hearing all the evidence, the court finds that Berenergy and defendants entered into an oral contract, the court should determine the terms of that contract. Only then can the court determine whether the contract is enforceable under the statute of frauds.

### 3. Past Undercharges and Unjust Enrichment

 Berenergy also sought to recover for its past "undercharges"—that is, the difference between the $150 per month actually charged and the industry standard market rate, dating back to the death of Sheldon Beren. Berenergy asked the trial court to declare that it could recover this difference under a theory of unjust enrichment.

Because the trial court rejected Berenergy's entire claim regarding the $150 rate, it did not separately address whether Berenergy could recover for these undercharges. But our reading of the amended complaint requires us to consider whether the request for lost income resulting from the undercharges stands in a position different from Berenergy's request for prospective relief.

We conclude that it does. Even when read in the light most favorable to Berenergy, the amended complaint does not contain allegations that would entitle Berenergy to recover for undercharges on a theory of unjust enrichment.

To recover on this theory, Berenergy would have to show that it would be unjust for defendants to retain the benefit of the below-market charges. *See DCB Constr. Co. v. Cent. City Dev. Co.*, 965 P.2d 115, 119–20 (Colo.1998)(to recover for unjust enrichment, plaintiff must prove that defendant received a benefit at its expense under circumstances that would make it unjust for defendant to retain the benefit without paying). But the amended complaint contains no allegation that would support such a showing. For example, Berenergy did not allege that it was induced to charge the $150 rate through fraud, coercion, or mistake. It alleged only that the $150 rate was offered "gratuitously," and there is nothing unjust about retaining a benefit conferred gratuitously. *See Liautaud v. Liautaud*, 221 F.3d 981, 988 (7th Cir.2000)("a party may not recover damages for unjust enrichment pursuant to a gift relationship"); *In re Estate of Hill*, 492 N.W.2d 288, 295 n. 2 (N.D.1992)(a finding of a gift necessarily defeats a finding of unjust enrichment, absent circumstances of fraud, undue influence, and the like, for equity generally cannot force the repayment of a gift).

▮ Thus, as to past undercharges, the amended complaint alleges nothing more than a series of completed gifts. Berenergy evidenced its intent to make a gift each month when it charged the below-market rate of $150, and this gift was completed each month when defendants paid the $150. *See Bunnell v. Iverson*, 147 Colo. 552, 557, 364 P.2d 385, 387 (1961)(gift is complete when there is (1) a clear and unmistakable intention to make the gift, and (2) the consummation of such intention by those acts which the law requires to divest the donor and invest the donee with the right of property). Once a gift is completed, it cannot be revoked. *Bunnell v. Iverson, supra*, 147 Colo. at 557, 364 P.2d at 388.

Accordingly, this aspect of Berenergy's amended complaint was properly dismissed under C.R.C.P. 12(b)(5).

### 4. Absence of a Written Operating Agreement

▮ Berenergy contends that the amended complaint presented a claim that is independent of its dispute about the $150 rate. In Berenergy's view, the amended complaint put at issue the entire operating relationship between Berenergy and defendants. We disagree.

Even when read in the light most favorable to Berenergy, the amended complaint presents no dispute apart from the $150 rate. Although Berenergy claimed that it had been harmed by the absence of a signed operating agreement, the alleged harm centered on the $150 rate:

21. In early 1998, pursuant to an Order of the Denver Probate Court, Berenergy attempted to sell its interest in all operated wells in which it owned working interests with the Beren Sons' Corporations. Due to the lack of a signed operating agreement between Berenergy and the Beren Sons' Corporations and the below market COPAS overhead rates which had been gratuitously established by Sheldon K. Beren, Berenergy was unable to complete the sale of its working interests. *Essentially, the gratuitous arrangement between Berenergy and the Beren Sons' Corporations severely limited the markerability of Berenergy's interests*, a situation that was never intended by Sheldon K. Beren.

22. Subsequently, Berenergy was advised that the Beren Sons' Corporations would each require, at a minimum, a two percent (2%) premium to sell their interests together with Berenergy and thereby allow Berenergy's interests to be sold. Alternative efforts to have the Beren Sons' Corporations enter into an operating agreement that would allow Berenergy to market its interest without the concurrence of the Beren Sons' Corporations have been futile. *The marketability and value of Berenergy's interests are being held hostage by the gratuitous arrangement* entered into by Sheldon K. Beren and the Beren Sons' Corporations.

(Emphasis added.)

▮ Berenergy contends that the broader claim is contained in its prayer for relief: "Plaintiff requests that the District Court define the legal relationship between Berenergy Corporation and each of the Beren Sons' Corporations." We reject this argument. A prayer for relief is not considered a component of a plaintiff's claim. *Township*

*Homeowners Ass'n v. Arapahoe Roofing & Sheet Metal Co.,* 844 P.2d 1316, 1318 (Colo. App.1992). And even if it were, Berenergy's request to "define [its] legal relationship" is based solely on factual allegations asserting uncertainty surrounding the $150 rate.

We therefore conclude that Berenergy did not allege any claim other than the one based on the $150 rate.

### III. Further Amendment

Berenergy argues that the trial court erred in ruling that further amendment of Berenergy's complaint would be futile. In light of our determinations above, we need not address this argument. On remand, the trial court may exercise its discretion in ruling on any motion for further amendment. *See Super Valu Stores, Inc. v. Dist. Court,* 906 P.2d 72, 77 (Colo.1995).

### IV. Attorney Fees and Costs

■ Defendants cross-appeal from the trial court's order denying their request for attorney fees. Defendants assert that Berenergy's action was both substantially frivolous and substantially vexatious. We disagree.

Section 13–17–102(2), C.R.S.2003, authorizes the court to award reasonable attorney fees against "any attorney or party who has brought or defended a civil action, either in whole or in part, that the court determines lacked substantial justification." The term "lacked substantial justification" means "substantially frivolous, substantially groundless, or substantially vexatious." Section 13–17–102(4), C.R.S.2003.

■ A claim or defense is frivolous if the proponent "can present no rational argument based on the evidence or law" in support of it. *W. United Realty, Inc. v. Isaacs,* 679 P.2d 1063, 1069 (Colo.1984). A vexatious claim or defense is one brought or maintained in bad faith. *Zivian v. Brooke–Hitching,* 28 P.3d 970, 974 (Colo.App.2001).

Defendants assert that this action was (1) substantially frivolous because Berenergy's amended complaint did not entitle it to relief under any legal theory and (2) substantially vexatious because it was brought in bad faith. We disagree. As this opinion demonstrates, Berenergy's action cannot be characterized

as substantially frivolous at this stage of the proceedings. We also find record support for the trial court's implicit determination that this action was not maintained in bad faith, including evidence to suggest that suit was brought only after other attempts to define the parties' respective rights and obligations had failed. Accordingly, we affirm the trial court's ruling regarding attorney fees.

■ Finally, Berenergy challenges the trial court's order awarding defendants their costs. We agree with Berenergy. The prevailing party in a motion to dismiss is entitled to recover its costs. Section 13–16–107, C.R.S.2003. In light of our determination that the underlying judgment must be reversed, the award of costs is also reversed. *Nichols v. Burlington N. & Santa Fe Ry.,* 56 P.3d 106, 110 (Colo.App.2002).

The court's order denying attorney fees is affirmed. The judgment is reversed, as is the order awarding costs, and the case is remanded for further proceedings consistent with this opinion.

Judge VOGT and Judge DAILEY concur.